Good morning, Your Honors. May it please the Court, Anthony Colombo, Federal Defenders of San Diego, on behalf of the appellant Benito Castro-Melgoza. Your Honors, in this case, Mr. Castro was denied his right to a fair trial because, first, the district court, over the defendant's objection, gave a dual deliberate ignorance instruction where there was no evidence of conscious avoidance, no middle ground. Well, why isn't the dual instruction okay? Because the defendant's opening statement gave rise to a likelihood of a closing argument on Center. The opening statement opened the jury's eyes to the possibility that in closing argument the defense could have argued, well, the prosecution never proved beyond a reasonable doubt he knew what was hidden. And also, the defense impeachment of his statements that were called his confession also suggested the possibility. The lawyers have to have the instructions before they make argument, and the judge and prosecutor couldn't know what was coming in the defense argument. Your Honor, I think that as the evidence came out at trial, there were two versions of events. A version A of events, which was that the defendant denied knowledge and stated that he had borrowed a car, went in Mexico when he went down to Ensenada to have his car fixed to see his mother, and borrowed the car to return to the United States. The version B of events was what the government argued, and that was that Mr. Castro confessed and that he stated that he was paid $1,000, that he knew there was marijuana concealed in the car and he knew it was concealed in the gas tank. There is no middle ground of conscious avoidance in this case as the evidence came out. But the question I was asking you is how does the prosecutor know and how does the judge know what's coming in final argument? Well, Your Honor. Version A strikes me as a real possibility. And version A, if you agree with the defense, was that the defendant denied knowledge. He said that he did not know. The defense never argued that Mr. Castro, well, Mr. Castro suspected. That was never something that was argued. The jury instructions have to be fashioned from the evidence that's presented at trial. In this case, that's what the arguments were. There was a version A and a version B. The possibility that because the one fact that was not bound up in the confession from which somebody might have surmised that he, something like willful ignorance, but maybe it's just negligence, is the 4-gallon gas tank. Could somebody say, well, if somebody gave you a truck with a 4-gallon gas tank to drive from Mexico, that that is in it, and you didn't inquire further, that in itself would support the instruction? Well, at this point, there was no evidence to show that, first of all, there wasn't more gas in the gas tank. The testimony of the secondary inspector was that his estimation was that the gas tank was a quarter full. He estimated that it might have held 20 gallons. But he didn't know. He didn't do any experiments as to determine how much gas was in fact in this gas tank or how much gas this gas tank actually held. It could have been a 32-gallon tank, for all we know. It could have held 8 gallons of gas. Is there any reason to think that Castro Melcos knew how much gas the gas tank held? No. There's no evidence that he stopped to get gas or should have inquired. He borrowed this truck. I see. So there's just no evidence that he knew how big the gas tank was. I'm sorry, Your Honor? There's no direct evidence that Castro Melcos knew that it was a less than ordinarily holding large gas tank. Whatever amount it is, there's no reason to think he knew how big it was. No, Your Honor. There's no evidence of that. And, in fact, the evidence shows that there was nothing unusual about this car at all. In fact, the agent Stentz tested, went into the car and tested the heating, the air conditioning, everything about the car was working. He even said that the gas tank was the knob was on a quarter full. Let me tell you where I have a problem with this theory, which is the problem with the theory may not be a problem with your argument, which is if, in fact, there's no such evidence and the jury is instructed that you need such evidence, then why isn't it just harmless? I mean, if there's no way that a reasonable jury could have come to a conclusion based on this willful ignorance thing, why should we assume they did? Well, it's not harmless for a number of reasons, Your Honor. The first is that the government did argue it on excerpt page 229. They did refer to the deliberate ignorance instruction. And we don't know what the jury did. We have to assume that the jury didn't follow the instructions, right? Because you're saying there's no evidence of this, no rational jury could have done this. Nonetheless, it's not harmless. I can't say what the jury did, Your Honor. But that's what you're saying, right? I mean, that has to be your argument, that there's no evidence of this and, therefore, that the instruction shouldn't have been given or there's not enough evidence. But the jury, nonetheless, could have found in the basis of it. Well, I think that the jury could have done what the government is arguing to say that this instruction was appropriate. What the government is doing is scrap-fashioning a version C of events and taking specific statements from the confession as a whole, picking out little pieces and saying, well, if you just look at those pieces, there may have been evidence of deliberate ignorance. Some pieces of the confession, whereas you either believe it or you don't believe it. Yeah. The jury could have done that. We don't know what the jury did, Your Honor. But if they did it, it was really impermissible, but they might have done it anyway. That's what that's – I'm just going to clarify that's what you're saying, because it's odd to me. But I gather that's what we're saying. Well, Your Honor, what I'm saying is that there's no – our argument is that there was no evidence to support this instruction. What the jury did in the deliberation rooms, we don't know. It's a matter of law that there was no evidence to support this instruction. But what the jury decided, I can't say. But you have to demonstrate there's some – because of the harmless error, you have to demonstrate there's some probability they did this. Well, Your Honor, we – there's – Rather than just say, oh, that's – you know, I don't know what that's doing there. There's obviously no evidence, and went to the actual knowledge instruction. They could have done what the government is arguing to support this instruction, that they took little pieces of the statement that Agent Stentz made on the stand about what Mr. Castro said and said, okay, well, he should have known based on that. That could have been done, but I do not know. I'm thinking there is evidence to support it. I'm thinking particularly after you consider the impeachment, but even without it. The impeachment suggests that maybe because of language difficulties, he didn't confess at all. Nobody knew what the other person was saying. So what you've got left is the guy borrows a truck from somebody else right across the border and agrees to drive it across the border from him. And a reasonable and somewhat skeptical individual might think, oh, he's probably being hired to drive dope across the border. If somebody asked me when I was in Tijuana, would he carry this across the border for me? First thing I think of, would he carry my briefcase across the border? Oh, no, I don't think so. So just from the fact of somebody asking him to drive the truck across the border, the first thing the jury thinks about is, gee, I wonder if he knows what's in the truck. I wonder if he wonders what's in the truck. I wonder if he's all but certain what's in the truck and is carefully avoiding finding out what's in the truck. Your Honor. It seems like just the fact of the mule setup may be enough to allow the jewel instruction. Your Honor, the jury might have said that themselves, but that's not enough to support the jewel instruction. Why not? What there has to be in this court. Why not? I mean, if anyone asked you or me to carry something across the border in Tijuana, boy, we'd sure think of it. Because that's not what the law requires, Your Honor. Under U.S. v. Beckett, Aguilar, Barron, and even Matt Pelley, there are three things that need to be shown by the government to support a jewel instruction. The first is, is that the defendant actually suspected that he might be involved in criminal activity. The second is, is that he deliberately avoided taking steps to confirm or deny those suspicions. And third, he did so in order to provide himself with a defense to avoid prosecution. There isn't any evidence of that. It seems like all three of those things are made out by what I just described. Your Honor, there's no evidence of that. The what the government argued, I'm sorry. I thought that the evidence wasn't that somebody gave him a truck. I may be confusing the cases, but I thought the evidence, that his story wasn't that somebody gave him a truck to drive across the border. It was that he borrowed the truck from somebody he knew. That's correct, Your Honor. Because he needed it, not because somebody gave him a truck to drive across the border. That's correct, Your Honor. That he borrowed the truck from a friend that he knew from Bell Gardens and also knew from Ensenada, because they were from the same neighborhood. That he borrowed the truck from a friend. I'm sure that Your Honor has borrowed cars from family members or friends before and not suspected that anything was in the gas tank. So I don't think that the evidence was sufficient to support a felony disruption. Getting back to as to why it's not or why it was harmless, Your Honor, the standard is, is that there needs to be compelling evidence of the government needs to establish of the defendant's guilt. And this, the evidence needs to be so overwhelming to support the evidence of guilt. In this case, it's not. In this case, as in Velarde Gomez, in the harmless error analysis, we have an explanation that's plausible as to why Mr. Cashner-Moggosa had the car and as to what he was doing and where he was going and how somebody could retrieve the drugs. The evidence in this case is not overwhelming. The defense did have a plausible explanation, and therefore, the error was harmful. In this case, there are two other issues that I want to discuss as well, and that's in regards to the prosecutorial misconduct. The first is, is that the government counsel committed misconduct when he stood up during rebuttal closing and demanded defense counsel to take the stand as a witness. And the second is, is that the defense, that the government commented on the defendant's right to silence during rebuttal closing. I believe that there is 30 seconds remaining, and I would like to reserve that. Thank you, counsel. Counsel? May it please the Court, Patrick O'Toole on behalf of the United States. Your Honors, I think it would have probably been better not to have given a dual instruction in this case. And I say that not because it can't be defended, and I would like to defend it in one minute, but I do think that the evidence was overwhelming, given what the government did produce and what the defendant did not do, so that... But it's not, I mean, somebody could have developed, somebody could have believed that the confession wasn't really, what didn't really happen, and they could have believed the story. Well, and that's the point, because given the attack in this case, you basically have a post-arrest statement that the government introduced that said, I got the car from somebody I knew who was a dope dealer. No, he didn't say he knew he was a dope dealer. He did. That was in the confession. Yes. No, that's what I'm talking about. Right. In the confession, the confession isn't just that I knew there was marijuana in the car. Well, that's true, but if you don't believe the confession ever happened, then you don't believe any of it. Well, but, see, the attack on the confession wasn't that the confession didn't happen at all, but that you couldn't necessarily believe that all of it happened. In other words, in this given case, the attack on the confession was you have this three page statement. You have the confession taken by somebody who wasn't a native Spanish speaker. There were two other witnesses there that the government didn't call, one of whom was a Spanish speaker, and there were various parts of the statement. In fact, the defense used part the defendant didn't testify. He didn't call any witnesses. So he himself used part of his post-arrest statements for his defense, which was he borrowed the car, he got the car from Cessna. I thought he had told that story separately earlier. But he also said in the post-arrest statement. Yeah, but he didn't need that. He apparently before, his first story was that he had borrowed the car. Yes. Right? No. And then after they said we don't believe you, then he tells this other story. Yes. And there's a particular reason for that that's important, but the point I wanted to make was this. The jury, given the attack in the case, which was that the particular incriminating page where marijuana was mentioned, which I think was on page two, that that was the one page of the three that wasn't signed. So the jury could have believed, well, he said that he got the car from a dope dealer, and he said that he was going to get paid $1,000 to drive the vehicle, and I think all this occurred in the middle of the night, but the jury could have thought, well, but we don't think that he said that he knew it was marijuana, that the agent read that into it, or that didn't happen because that wasn't initial law. So if you take that part of the statement out, that I knew that there was marijuana What is the problem here is we don't have the statement, right? It's very hard to work with as a result. We don't physically have the statement. It's not in the record. Is that right? It was identified as an exhibit, but it was not admitted. You know perfectly well exhibits go back to the attorneys. Yes. No. If the Court wanted it up to defense counsel, I would have known. It's you who wanted it. You wanted us to see it. We should have seen it. You should have gotten it in. Well, if I were trial counsel, I think a couple of things would have been done. Or the defense should have. Would have been done different. I have, well, if the Court wants it, I have no objection to the Court having it. We'll issue an order if we do. Okay. But it's true that it's not in the record. Yes. Go ahead. But the point is, given the attack in this case, the jury could have believed part of the statement, but not the I knew it was marijuana part. But, for example, because it's not in the record, just to clarify, we don't have any reason to think that the fact that the guy was a drug dealer was on a different page than the fact that he knew it was marijuana, right? We don't know that. Okay. I mean, we don't know that it's part of the record. We just know that that was all part of a statement and that the marijuana we do know that the marijuana critical part was not the part that was initial off. So I say that the jury could have, given the attack, thought that part of the statement was correct, which would have been going to the deliberate ignorance part, and part of it wasn't. But the more important part of this case is I think the Juul instruction really is a conditional instruction. And, Judge Kleinfeld, I think you hit the nail on the head, but reading the exact instruction from ER 227, you may find that defendant acted knowingly if you find beyond a reasonable doubt that he was aware of a high probability that drugs were in his automobile and deliberately avoided learning the truth. Well, this instruction really is only applicable if there are facts from which a jury could find it. This is the question I was asking your opponent. But on that theory, the whole the theory that the defense is arguing is a theory that our case is recognized, right? That on the one hand, there is not sufficient evidence to have generated the Juul instruction in the first place. But on the other hand, it wasn't harmless error. We have cases in holding, right? Yes. There are cases in holding. And so your objection to it is a generic objection. It's not special to this case. And I have a hard time with the theory, but the theory exists. Well, I – Because it's basically, and the cases say this directly, because the jury might have mistakenly done this based on negligence or recklessness and not really understood the instruction. Because if they understood the instruction, they never should have done it, right? Yes. Yes. So I guess three things happen. One is all the instructions fly by the jury and it doesn't matter at all. Or they understand the instruction and it's not applicable because it's a conditional instruction and everything's fine. Or you have this other thing, which is, well, it doesn't quite fly by them, it's kind of there in the background, and it affects things. But that's what our cases have recognized, and I think you're just stuck with that. I think that's true. But I do think that the Alvarado case in particular, 838 F. 2nd. 311, is probably the most important case, and it's cited by the defense, I might add, because it holds that the harmless error analysis does apply when they're giving a Juul instruction. So even if this Court thinks that the Juul instruction shouldn't have been given and I think given the state of the government's case, I wouldn't have asked for it. But a different prosecutor did, the Court did give it, and I think you could validate it based on the argument that I made. But it's clear that any error in giving the instruction was harmless beyond a reasonable doubt in this given case. Could you articulate the distinction between this case and Mapelli? I'm sorry? This case and? Mapelli. We said it wasn't harmless error in Mapelli. Well, I don't have all the facts of that case in mind. I do have the facts of Alvarado. I mean, the Court has gone two ways. There have been cases where it said, and I think there were two other cases that dealt with this. And thought that once you got your list of judges on your panel, you would have read Mapelli. No. I think Sanchez-Robles, for example, was a case where the Court said the Juul instruction was the wrongest to have given and it wasn't harmless error. But there's never been a case that I've seen. Look, in parts of our previous colloquy, I gave the hypo, what if somebody asks you to get a car and you say, okay, let's go to Hertz Rent-A-Car in Tijuana. If I get a car and I'm in a parking lot and I'm across the border, neither you nor I would accept the package or the truck or whatever it was. But in this case, the story is that the defendant asked somebody else, hey, can I borrow your vehicle? And the guy says, okay. Well, that gives rise to much less of a concern. If I go to Hertz Rent-A-Car to get a car in Tijuana, I don't worry much that there's going to be marijuana in it. However, when the guy he borrows the car from is paying him instead of him paying the guy he borrows the car from, I wonder if that puts me right back where I was when somebody asks me to carry a package across the border. I'd like you to relate these to Mapelli because in Mapelli we said you give the instruction where there isn't a basis for it, it's reversible. I think if there's, if it's error to give the instruction, and I'm suggesting there is an argument under which the instruction was properly given, I think an abundance of caution, given the strength of the government's case, I wouldn't have asked for it. But that's not the case. I'm not asking about whether you're a more careful lawyer than the trial lawyer. I'm asking for something that will help us decide the case now, given what we've got and given Mapelli. I think, well, I think that we have, that this Court has to analyze harmless error. And under the facts of this given case, here are the facts of which, and the test is this. Under Alvarado, harmless because overwhelming evidence of guilt beyond a reasonable doubt, relying also on the Beckett case. Okay. What about if we don't go the harmless error route? Is there an argument that it was not error? Yes. And that was the first argument that I made, which was that the jury could have disbelieved given the attack on this statement, which was that the only part of the statement that referred to marijuana was the one part of the statement that wasn't initialed off by the Spanish-speaking witness. But we have a real problem dealing with that without the piece of paper. Why? Because I, if all of the relevant information, the information you're saying the jury could have believed and the information you're saying they could not have believed is all on the same non-initial page, then on what theory would, and I suspect it is, but I don't know because we don't have it. Then on what theory would they believe some of it and not others of it? Well, the theory would be this, Your Honor. The evidence that the jury actually heard was that the only reference to the word marijuana was on the page that was not initialed off by the police officer. And that could also be the only place where the $1,000 is and the drug dealer, known drug dealer and so on. It could be, but there was no evidence of that. So in other words, a reasonable jury could find that the attack was on the word marijuana. That was the only page that was not initialed off on. Did this come out in the cross so that we can tell from the cross? Yes. Does the cross say, isn't it true that the only page that says marijuana there's no initial on? Absolutely. And Mr. Clumbo was very effective. So you're saying we do know, even though we don't have the statement. We do know that. We know that, but we don't know what else was on that page. That's true. But a reasonable jury could have found. I don't know why you didn't make a motion to supplement the record with that exhibit. I, well, I wish it had been done. If we could do it now, I'll still do it. I have no objection to if this counsel wants to make it a joint exhibit. I mean, I would like the truth to be out. My guess is that he won't at this point. And I understand that. And I can't blame him. I mean, I was not appellate counsel at the time that the brief was done also. The assistants left the office. But I do think that the jury heard evidence and could have found that because the attack was on the word marijuana, that everything else, because that wasn't attacked, was on the other pages that were initialed off. And even beyond that, the other facts weren't as conclusive as that one. I mean, that is the conclusive fact. I knew there was marijuana. So the jury could have thought, even if it was initialed off or didn't, that, well, he exaggerated that fact. He read into it. There was a language problem. But everything else was fine. In the other facts, again, getting the car, being paid $1,000 from a known drug dealer would go to a dual instruction. Thank you, counsel. I just have one other question. Yeah, sure. The, without, when you said it was overwhelming evidence, that requires believing the confession, right? Without that, it's not overwhelming evidence. Whether it's overwhelming evidence to the point of the error being harmless beyond that, I'm not quite sure. But there's very strong evidence beyond that. And if I might have 30 seconds to go into it, I mean, not only do we have the simple facts that if the driver's still occupant in a vehicle where there's marijuana, we have the nervousness that suggests consciousness of guilt. More important than that, he tells a false statement to begin with. In other words, he says, I haven't been in this vehicle before. I don't know anything about it. And he's confronted with a receipt. And the receipt is a furniture store receipt that ties him into that vehicle before. That's the point at which he changes the story in which he says, yes, you got me. And his confession was so specific. For one thing, he said the marijuana was in the gas tank. And there's no evidence that he had been told that the marijuana was found in the gas tank before. I mean, he's only going to know what's in the gas tank if he actually knew, which is an additional reason why I would not have asked for a jewel instruction. But it's not only, yes, I knew about the marijuana. It's I was getting paid $1,000, a price that's very consistent with what mules get paid. I'm taking it up to a certain location. I'm driving to a certain location. Kagan. But my hypothesis was what if you don't think the confession was really given. But, okay. Thank you.  Thank you very much. Thank you, counsel. There are three cases that show that this instruction was absolutely erroneous. And that's U.S. v. Beckett, U.S. v. Barron, and U.S. v. Garzon. Those are three cases that I believe that Your Honors should definitely look at and that the defense is relying upon. In regards to the overwhelming evidence of guilt, I believe what that means is that the evidence could not be interpreted in any other way other than the defendant was guilty. First of all, we had initially the defendant denied knowledge. He gave a different plausible version of events than the confession. In regards to the nervousness, the primary inspector testified that maybe over 50 percent of the time, but less than 60 percent of the time, he sees unusual nervous behavior, refers somebody to secondary, and nothing is found. This Court in Chavez-Valenzuela has stated that the innocent and guilty alike are nervous when they come into contact with law enforcement. So that's not something that can be interpreted in just a guilty way. In regards to the additional facts that the government is relying upon, the furniture receipt, that was found in the center console. When you borrow somebody's car, you put your personal effects there in the car. So just the fact that this furniture receipt was found in the car, that it had a date on days before in Mr. Castro's name, isn't evidence of guilt. It's just evidence that he had a furniture receipt on his person. Also in regards to the gas tank, we've gone through that. There could have been 80 gallons of gas in there. There could have been 50 gallons. We don't know because it was just an estimate. So there is not overwhelming evidence of guilt. But what about the thesis that, assuming the instruction, that the jury could have believed some but not all of the evidence of the confession? Well, Your Honor, that's what the government is arguing. I don't believe that the defense didn't argue that. They argued first that there was a version of events, version A, the defendant denied knowledge. And in the process of examining it the question is whether the evidence would support it, not whether the defense was arguing it. I'm sorry, Your Honor. Is the judgment regarding whether the instruction was proper, whether the defense was arguing it, or whether the evidence would support it? Whether the evidence would support it. All right. So why wouldn't the evidence support that? Well, the evidence would not support it because if you would credit Agent Spence's testimony, the entire confession was that he was he knew that there was marijuana concealed in the gas tank. He was being paid $1,000 to conceal it. Counsel, what kills me on this case is $1,000. When I go to Hertz, I pay them. If anyone paid me to drive a car across the border, I'd figure he had an ulterior motive. And if the jury believes that he got $1,000, why isn't that something where the jury is immediately going to focus its attention on Sienter and need the Juul instruction? Well, Your Honor, the Juul instruction waters down the Sienter. The government has to prove beyond a reasonable doubt that the defendant, in fact, knew. And they either believe that he didn't know or that he didn't know. It doesn't water it down. The Juul instruction just tells the jury correctly what the law is on Sienter. Well, Your Honor, the facts in this case were either the defendant didn't know or he knew. It's either you believe that his first statement or you believe his second statement. I don't see where that's so. I don't see where that's so, that he either knows or he doesn't know. If you believe the whole confession, he knows. But it strikes me as entirely possible that the jury thinks that the officer fancied up the confession a little bit, but never – and that's why they didn't put the Spanish speaker on, but nevertheless, that $1,000, boy, he knew something was in that truck. Your Honor, the – that's plausible to think that that's what the jury did. But there is no evidence that shows that the defendant consciously avoided learning the facts in this case. There's just not evidence to sustain it. The cases where a Juul instruction is appropriate in Juul itself, the defendant was – saw a compartment and failed to look in it, knowing that there could have been drugs in there. All of the cases that – where a Juul instruction has been determined to be appropriate are those type of cases. If you look at – Well, it was developed for those cases so that when the dope dealer says drive this car across the border and don't open the trunk, and the guy doesn't open the trunk, he can't beat the charge on that. That's true, Your Honor. But in this case, you don't have that scenario. There's no evidence that Mr. Castro suspected or said that he suspected and failed to follow up on it. That's not what the evidence presented. We still argued a version A and a version B. Thank you, counsel. And if I may add just one other thing. I think you're done. If you have just a couple of seconds, go ahead, but I don't want another discussion. I just want to say, in regards to the harmlessness, I believe that the prosecutorial conduct in this case also should be considered as a cumulative effect in regards to the harmless error analysis overall. Thank you, counsel.
judges: Noonan, Kleinfeld, Berzon